## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| MELANIE DEPAMPHILIS, | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF NEWINGTON, BOARD OF | ) | |
| FIRE COMMISSIONERS FOR THE TOWN | ) | |
| OF NEWINGTON, JEFFREY TROMMER, | ) | |
| CRAIG STEGMAIER, AND BRIAN | ) | |
| WHALEN | ) | |
| Defendants. | ) | |

_____

## <u>COMPLAINT</u>

### I.    INTRODUCTION

1.    Plaintiff Melanie Depamphilis is a career firefighter.  She has devoted the last twenty-five years of her life to serving various towns and cities throughout Connecticut.  She reached the position of Lieutenant (City of Hartford), and has served in many capacities (District Chief Aide, Pump Operator, Ladder Driver, Training Instructor, 2Q Instructor and Lieutenant).  Ms. Depamphilis prides herself in being a role model for other aspiring female firefighters.  Firefighting is not a job for Ms. Depamphilis, it is a way of life.  Her husband is a career firefighter, and her son has recently joined the ranks as a volunteer firefighter.

2.    Ms. Depamphilis joined the Town of Newington Volunteer Fire Department ("NVFD") in 2014.  As a resident of the Town of Newington (the "Town"), it was particularly impactful for her to serve the community in which she lives.  Since 2014, Ms. Depamphilis has served the Town as a volunteer Firefighter in in the roles of Engine 2 Engineer (2014-2015);

Staff Captain (2015-2018); 2nd Lieutenant of Company 2 (2015-2018); 1st Lieutenant of Company 2 (2018-2021); and Captain of Company 2 (2021-2023).

3.      Over the course of Ms. Depamphilis' career, she has witnessed, and has been personally subjected to, a hostile work environment, gender/sex harassment and discrimination, and retaliation by male members of the Board of Fire Commissioners for the Town of Newington ("BOFC") and the NVFD.

4.      In June 2023, Ms. Depamphilis was subpoenaed to appear at a deposition to testify in a civil lawsuit brought in the United States District of Connecticut by a former female NVFD member, Manke v. Town of Newington, 3:22-CV-01409-MPS ("Manke lawsuit"). Manke alleged numerous legal claims against the Town, BOFC, and a fellow member of the NVFD, including retaliation, hostile work environment, sex harassment and gender discrimination

5.      Upon becoming aware of Ms. Depamphilis' involvement and assistance in the Manke lawsuit, the BOFC and members of the NVFD, including individual Defendants Whalen, Trommer, and Stegmaier, subjected Ms. Depamphilis to gender and sex harassment, a hostile work environment, and relentless, vicious  retaliation.

6.      This action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees, pursuant to Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e et seq.; the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat., §46a-60 et seq.; and pursuant to 42 U.S.C. § 1983 for the deprivation of rights guaranteed under the Fourteenth Amendment to the United States Constitution.  Plaintiff also alleges aiding and abetting claims under CFEPA against individual Defendants Trommer, Stegmaier, and Whalen.

7.      Plaintiff requests a trial by jury on all issues triable to a jury.

## II.    JURISDICTION AND VENUE

8.    Subject matter jurisdiction is based on the existence a federal question pursuant to 28 U.S.C. § 1331.

9.    Supplemental jurisdiction exists over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claims.

10.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this complaint occurred within this district.

11.    Plaintiff timely filed her claims of discrimination and retaliation with the State of Connecticut, Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC").

   a.  On January 17, 2025,  Plaintiff was issued a "Release of Jurisdiction" by the CHRO for her claims against the Town of Newington, Board of Fire Commissioners, Trommer, Stegmaier, and Whalen.  See Ex. A.

   b.  On February 5, 2025, the Plaintiff was issued a "Dismissal and Notice of Rights" by the United States Equal Employment Opportunity Commission for her claims against the Town and BOFC.  See Ex. B.

## III.    PARTIES

12.    Plaintiff, Melanie Depamphilis, is a female who, along with her family, has resided in the Town for 32 years.

13.    Defendant, the Town, is a municipal entity in the State of Connecticut with the capacity to sue and be sued.

14.    Defendant, BOFC, is a political subdivision of the Town established pursuant to the Town charter (Section 203 (B)) and ordinances, and the laws of the State of Connecticut

(Public Act 912), charged with operating the NVFD.  The BOFC acts on behalf of the Town, and the acts and omissions of the BOFC are the acts and omissions of the Town.

15.     Members of the BOFC are elected to their positions by the general electorate of the Town of Newington for a four (4) year term.

16.     The BOFC, and its members, were, at all times relevant to this complaint, acting under color of state law.

17.     The BOFC is charged with supervising, maintaining and caring for all NVFD buildings and fire equipment of the NVFD; appointing fire chief(s) and such other officers and personnel as it deems necessary; recommending the purchase of additional apparatus and equipment when needed; purchasing additional apparatus and equipment when duly authorized; and annually preparing and submitting a budget for the maintenance and care of the equipment and buildings of the NVFD.

18.     The BOFC acts as a final board of appeal for NVFD personnel matters.

19.     The Mission Statement of the NVFD is to "provide state of the art fire suppression, rescue and prevention services to reduce property loss, injuries or death from fires, accidents, hazardous materials releases or other natural disasters, while recognizing the significant volunteer contribution of our members as the main ingredient to our success."

20.     At all times relevant to these allegations, members of the NVFD, including Depamphilis, received remuneration from the Town in exchange for their services. Such remuneration included: (1) payments per fire call; (2) an annual stipend; and (3) a pension.

21.     Defendant, Jeffrey Trommer ("Trommer") (Male), is a resident of Connecticut and was the Fire Chief for the NVFD during all relevant times herein.

22.     Defendant Trommer was, at all times relevant to this complaint, acting under color of state law.  He is being sued in his individual capacity.

23.     Defendant, Craig Stegmaier ("Stegmaier") (Male), is the Deputy Fire Chief of the NVFD and was, at all times relevant to this complaint,  responsible for personnel matters within the NVFD.

24.     Defendant Stegmaier was, at all times relevant to this complaint, acting under color of state law.  He is being sued in his individual capacity.

25.     Defendant Brian "Bubba" Whalen ("Whalen") (Male) is the Chairman of the BOFC and a member of Company 2 of the NVFD

26.     Defendant Whalen was, at all times relevant to this complaint, acting under color of state law.  He is being sued in his individual capacity.

## IV.     STATEMENT OF CLAIMS

### Ms. Depamphilis' Career As a Firefighter

27.     In 1998, Ms. Depamphilis became a firefighter for the City of Hartford Fire Department.  She served in that role until her retirement in 2018.

28.     The City of Hartford Fire Department is an ISO (Insurance Services Office) Class 1 agency serving the City of Hartford, with approximately 361 career personnel who staff approximately 17 Fire Companies.   An ISO Class 1 fire department signifies the highest level of fire protection services.

29.     In 2011, Ms. Depamphilis was promoted to Pump Operator/Deputy Chief Aide for the City of Hartford Fire Department. She served in that position from 2011-2014.

30.     In 2014, Ms. Depamphilis was promoted to Lieutenant of the City of Hartford Fire Department.   In that role, her responsibilities included the management, direction,

coordination, and evaluation of the actions of firefighters and other staff members assigned to the company while at incidents involving, fire, emergency medical, hazardous materials, public education, fire prevention, training, and in-station activities.  Ms. Depamphilis served as a Lieutenant in the Hartford Fire Department until her retirement in 2018.

31.    While a member of the Hartford Fire Department, Ms. Depamphilis received numerous awards and achievement citations, including, Hartford Fire Department Citation Awards (2006, 2010, 2013), Hartford Fire Department 2008 Mayor's Citation Award, and Hartford Fire Class 1 ISO & National CFO Accreditation Committee  (2006, 2012).

32.    In addition to her role as a firefighter for the City of Hartford, Ms. Depamphilis also served as the Administrative Services Officer for the City of New Britain Fire Department for three years.

33.    At no time during the twenty years that Ms. Depamphilis served as a firefighter for the City of Hartford were her firefighting credentials, State training certifications, education, resume, or abilities ever called into question.

### Ms. Depamphilis Becomes a NVFD Firefighter & Is Appointed Captain

34.    Ms. Depamphilis and her family have lived in the Town for approximately 32 years.  Her family has a long tradition of serving the Town and the NVFD.  Her husband has served the NVFD for over 39 years.   Her son served 3 years as a Cadet in the NVFD, and became a full member in December 2024.

35.    In 2014, Ms. Depamphilis applied for active membership to the NVFD. The NVFD is an ISO Class 5 Agency.

36.    At the time she applied for membership to the NVFD there were less than three female members of the NVFD; the NVFD was heavily male dominated.

37.     In addition to residency and/or employment requirements, to qualify for membership in the NVFD an applicant must be of good moral character; pass a State of Connecticut background check; and pass the medical and physical agility requirements.

38.     When she applied to become a volunteer fire fighter for the NVFD, Ms. Depamphilis submitted the required application as well as her resume, State fire training certifications and records to both the NVFD personnel and NVFD training divisions.

39.     From 2014-2015 Ms. Depamphilis served as a firefighter and Engine 2 Engineer.

40.     Ms. Depamphilis was immediately promoted to Staff Captain of the NVFD's Personnel Division and 2nd Lieutenant of Company 2.  She served in these two officer positions from 2015-2018.

41.     The NVFD process for the selection of company officers (Captains and Lieutenants) is as follows: Connecticut Fire Academy written test, outside chiefs' oral boards, company evaluations, and NVFD Chief evaluations.

42.     From January to June 2018, Ms. Depamphilis served as the lead instructor teaching two class each month for approximately 55-70 members of all ranks of the NVFD.  The NVFD training division requested that Ms. Depamphilis teach this class as she was certified from the Hartford Fire Academy to do so.

43.     In 2018, Ms. Depamphilis was promoted to 1st Lieutenant of Company 2.

44.     At no time during the selections of her appointments to  2nd or 1st Lieutenants were Ms. Depamphilis' qualifications, State fire training certifications, firefighting credentials, education, or resume questioned by the BOFC or NVFD.

45.     In  or about May 2021, Ms. Depamphilis submitted her resume for the Company Officer Process for 2021-2024.

46.     On May 4, 2021, Ms. Depamphilis was informed by Defendant Stegmaier that she was deemed to be qualified to be a candidate for the 2021-2024 Company Officer Process.

47.     On July 1, 2021, Ms. Depamphilis was promoted to Captain of Company 2. She scored in the top 3 out of the 22 candidates for Captain.

48.      Ms. Depamphilis was the first and only female in the 100 year history of the NVFD to hold the Line/Suppression Officer position both as Lieutenant and Captain.

49.     At no time during the selection or appointment of Ms. Depamphilis as Captain were her qualifications, State fire training certifications, firefighting credentials, education, or resume questioned by the BOFC or NVFD.

50.     While a member of the NVFD, Ms. Depamphilis received numerous awards and achievements, including, Newington Fire Department Company 2 Officer of the Year (2015, 2016).

51.     Ms. Depamphilis holds her 2Q operator license operating and safely driving all line apparatus and is the only NVFD female firefighter 2Q endorsed and qualified on E2, T2, Tac2, E1, Rescue 1, E5, E6, and T3.

52.     During her tenure as Captain of Company 2, Ms. Depamphilis served as the lead instructor/officer qualifying NVFD members on the NVFD's newest Truck 2 apparatus.

53.     At no time prior to the events described herein, were Ms. Depamphilis' firefighting credentials, education, fire training certifications, resume, or abilities ever questioned by the Town, NVFD, or BOFC, nor was Ms. Depamphilis deemed not quailed to serve as Captain of the NVFD Company 2.

**Ms. Depamphilis is Subpoenaed to Testify In a Harassment, Discrimination and Retaliation Lawsuit Brought By a Fellow Female NVFD Firefighter.**

54.     On or about June 9, 2023, Ms. Depamphilis was subpoenaed to appear at a deposition to testify in a civil lawsuit brought in the United States District of Connecticut by a former female FD member, <u>Manke v. Town of Newington</u>, 3:22-CV-01409-MPS ("Manke Lawsuit").

55.     In her lawsuit, Manke alleged numerous claims against the Town, BOFC, and a fellow member of the FD, including retaliation, hostile work environment, sex harassment and gender discrimination in connection with her receipt of a package in the mail from a fellow male member of the NVFD containing a chocolate penis with a note telling her to "Eat a Dick."

**Ms. Depamphilis is Subjected to Discrimination, a Hostile Work Environment and Retaliation After She Was Subpoenaed to Testify in the Manke Lawsuit.**

56.     Once members of the BOFC and members of the NVFD, including Whalen, Trommer, and Stegmaier, became aware of Ms. Depamphilis' involvement and assistance in the Manke Lawsuit, she was subjected to gender and sex harassment, a hostile work environment, and retaliation.

57.     On or about July 4, 2023, Trommer became extremely angry, aggressive, and belittling toward Ms. Depamphilis at a fire call incident at 28 Hemlock St ("Hemlock St. incident").

58.     Unbeknownst to Ms. Depamphilis at the time, on July 5, 2025, Trommer requested disciplinary action be taken against her in connection with that fire call and accused her of "show[ing] disrespect of the Fire Chief Administration."

59.     On or about July 4, 2023, Ms. Depamphilis reported that her leather Captain's helmet has been taken from her secured locker.  Ms. Depamphilis was accused of losing the

helmet.  This accusation was false. An investigation was never undertaken and she was never given a replacement helmet.

60.     On or about July 10, 2023, while she was serving as Captain of Company No. 2, it was reported to Ms. Depamphilis that Whalen had contraband, in the form of pornography, in his assigned firehouse locker located in the accessible area of the NVFD men's locker room.

61.     As Captain of Company No. 2, Ms. Depamphilis directed Whalen to immediately remove any contraband materials from his locker as the materials violated the NVFD rules and the Town of Newington Sexual Harassment Policy.

62.     Whalen stated to Ms. Depamphilis that he would remove the contraband materials from his locker, but that he wanted to know who had reported it as it was a violation of his privacy.  Ms. Depamphilis informed Whalen that NVFD and Town policies required that he remove these items immediately.

63.     Ms. Depamphilis requested that her 1st and 2nd Lieutenants (Males) confirm with Whalen that the pornographic materials had been removed.  Whalen became extremely aggressive in response.  Concerned for the safety of NVFD members, Ms. Depamphilis asked Whalen to calm down.  Whalen became aggressive, angry and belligerent and screamed at Ms. Depamphilis, "You'll be sorry for doing this" and "You're gonna wish this didn't happen, " and "I will have your job for this."

64.     A reasonable person in the Plaintiff's position would find the conduct of Whalen to be both threatening and highly offensive.

65.     On or about July 11th, Ms. Depamphilis submitted to Stegmaier a Memorandum of Firefighter Conduct for Whalen outlining exactly what had occurred with respect to the events leading up to and following the incident with Whalen and the contraband in his locker.

66.     On or about July 16, 2023, Ms. Depamphilis requested that Stegmaier conduct an investigation into Whalen's actions as she was concerned for her safety, and was being subjected to continuing harassment and a hostile work environment. Ms. Depamphilis also followed up with her Company 2 Officers, Deputy Chief Nesklada and Assistant NVFD Chief Lapierre (both Males) regarding Whalen's conduct.

67.     Upon information and belief, the BOFC was, at all relevant times, aware of Ms. Depamphilis' hostile work environment complaints and took no action to investigate or otherwise address her complaints or the harassment she was subjected to as a result of her gender.

68.     Upon information and belief, the BOFC and NVFD did not conduct any investigation into Whalen's actions as Plaintiff's complaint was deemed to be "unfounded' ab initio.

69.     The BOFC and NVFD did not conduct any investigation unto Ms. Depamphilis' hostile work environment and discrimination complaint.

70.     The actions of Whalen, members of the NVFD, and the BOFC created a pervasive and hostile work environment characterized by unlawful harassment of a sexually based nature, which permeated the Plaintiff's workplace.

71.     On or about July 18, 2023, it was requested that Ms. Depamphilis attend a meeting with Stegmaier and Assistant NVFD Chief Lapierre (Male). Ms. Depamphilis assumed that the purpose of this meeting was to address Whalen's conduct towards Ms. Depamphilis, and investigate the allegations of pornographic material in Whalen's locker.

72.     Rather, at the meeting held on or about July 18, 2023, Stegmaier informed Ms. Depamphilis that Trommer had requested that she be disciplined in connection with the Hemlock St. incident.

73.     In that same meeting, Ms. Depamphilis was also informed that Trommer had requested that discipline be taken against her in connection with a NVFD awards event held back on June 3, 2023 ("June 3rd awards event"). At no point prior to this meeting had Ms. Depamphilis ever been informed of any issue in connection with the June 3rd awards event.

74.     At that July 18, 2023 meeting, Ms. Depamphilis  again informed Stegmaier that she was being subjected to a hostile work environment, harassment and retaliation, and asked for assistance from NVFD and BOFC.

75.     Despite Ms. Depamphilis' best efforts to continue to lead her Company in such a harassing, hostile, and retaliatory environment, Trommer and other male members of the NVFD belittled her authority as a Captain, and refused to properly communicate with her, putting her safety, as well as the safety of her Company and the public, in jeopardy.

76.     On or about August 3, 2023, Whalen filed a hostile work environment and harassment complaint against Ms. Depamphilis .

77.     On or about August 5, 2023, Ms. Depamphilis received another subpoena to testify in the Manke lawsuit

78.     On or about August 7, 2023, Stegmaier sent an email to the Mayor of the Town, as well as a member of the Town Council, accusing Ms. Depamphilis of circumventing the chain of command with respect to Whalen and the reports of pornographic material in his locker and portraying the NVFD in a negative light due to "personal vendettas."  For the first time, Stegmaier also accused Ms. Depamphilis' NVFD Company, Company 2, of having low morale.

79.    On or about August 9, 2023, a disciplinary notice was drafted and placed in Ms. Depamphilis' personnel file pertaining to the June 3, 2023 awards event. At no time was she given a copy of or informed that this disciplinary notice was being placed in her file.  The disciplinary notice falsely stated that a meeting with Ms. Depamphilis had occurred on August 9, 2023, to discuss this incident. No such meeting occurred on this date.

80.    On or about August 10, 2023, Ms. Depamphilis sent an email to Deputy Chief Stegmaier, the Mayor of the Town of Newington, and various members of the NVFD and BOFC, stating that she was being subjected to a hostile work environment and on-going harassment.  In her complaint, Ms. Depamphilis raised concerns that she was being subjected to retaliation and harassment as a result of her involvement in the Manke lawsuit, her investigation of pornographic material in the fire house, and the August 9, 2023 disciplinary notice.  Ms. Depamphilis requested that the on-going retaliation and harassment end.

81.    On or about August 16, 2023, Trommer filed a hostile work environment/defamation of character/harassment workplace complaint against Ms. Depamphilis. Included in that complaint were over 28 allegations against Ms. Depamphilis that dated back as far as 2016.

82.    On or about August 17, 2023, Ms. Depamphilis was placed on Administrative Leave in response to the workplace complaints made against her by Whalen and Trommer.   The NVFD locked Ms. Depamphilis out of the firehouse, her NVFD email, and her NVFD files. While out on Administrative Leave, Ms. Depamphilis was unable to respond to any pay per call incidents.

83.    The discipline imposed on Ms. Depamphilis by the BOFC was a pretext to cover up the discriminatory and retaliatory conduct to which she had been continually subjected.

84.     On or about September 1, 2023, the Town hired  a third-party to conduct an investigation into the August 2023 complaints made by Whalen and Trommer against Ms. Depamphilis (the "third-party investigation").   In-person interviews were conducted with seventeen people.

85.     On September 28, 2023, the third-party investigation concluded and the investigator issued a written report concluding that Ms. Depamphilis' actions did not constitute a hostile work environment, harassment or defamation.

86.     Given the conclusion and findings of the third-party investigation, Ms. Depamphilis requested on numerous occasions to be removed from Administrative Leave and returned her position as Captain.

87.     The BOFC and NVFD refused to return her to her position and continued to subject Ms. Depamphilis to a continuing course of harassment and retaliation.

88.     On or about October 10, 2023, Ms. Depamphilis was notified that the BOFC intended to go into Executive Session on October 12th, and that her attendance was required.  She was informed that that Whalen and Trommer would be in attendance, but that no additional people would be permitted to attend the meeting.

89.     Ms. Depamphilis was not informed of the required statutory basis for this BOFC Executive Session. She made a written request that the meeting be held in Open Meeting.

90.     Rather than respond to Ms. Depamphilis' request for an Open Meeting, on October 11, 2023, she was notified by the BOFC that she would not have to attend the meeting because "the [third-party] investigation had not been completed."

91.     The BOFC amended its agenda for the October 12th meeting stating that there would be an Executive Session to discuss "pending litigation—Update on Final Investigative

Report." Upon information and belief, Whalen and Trommer were invited to attend the Executive Session with the third-party investigatory attorney present. Ms. Depamphilis was not permitted to attend this meeting.

92. On or about October 14, 2023, Ms. Depamphilis was informed that the BOFC Commissioner, Stoddard (Male), had requested the recording from the interviews conducted during the third-party investigation. She was given until October 16, 2023 to consent or object to this request.

93. In response to that request, on October 14, 2023, Ms. Depamphilis indicated to the BOFC that she was not in a position to respond to the request absent an explanation as to the basis for the request and release of this information as the investigative summary was marked attorney-client privileged, and contained personal and confidential information. No further information was provided to Ms. Depamphilis in response to her inquiry.

94. On that same date, October 14, 2023, Ms. Depamphilis again requested that she be provided with the date she was to be removed from Administrative Leave, and demanded to be returned to her position as Captain immediately. Again, Ms. Depamphilis received no response.

95. On or about October 23, 2023, the NVFD posted an opening for the Deputy Fire Chief Position.

96. Despite meeting the qualifications to serve in the Deputy Fire Chief position, Ms. Depamphilis could not apply for the position due to the discriminatory, retaliatory and harassing conduct taken against her which resulted in her being placed on Administrative Leave, and the BOFC and NVFD's intentional refusal to remove her from Administrative Leave. A male was appointed to the position of Deputy Fire Chief.

97.     On or about October 30, 2023, Ms. Depamphilis sent a letter to the Mayor and Town Attorney, as well as the BOFC, again requesting that she be removed from Administrative Leave.  In that correspondence, Ms. Depamphilis stated that she "believe[d] that the continued refusal of the BOFC to remove [her] from Administrative Leave—as well the baseless complaints made against [her] which led to [her] being investigated and placed on Administrative Leave in the first place—are continued retaliation for, among other things, [her] participation as a witness in the pending litigation brought by Meghan Manke, a former member of the Newington Fire Department."

98.     On or about November 6, 2023, two months after a full, independent investigation concluded that the Whalen and Trommer complaints against Ms. Depamphilis were unsubstantiated, she was informed that she was being restored to the position of Captain of Company 2 and removed from administrative leave.

99.     In that same November 6, 2023 letter, Ms. Depamphilis was informed that she was being placed on a one-year probation based on "issues related to the morale at Company 2" and "actions and behaviors" not becoming of an officer of the FD.  The BOFC admitted that it "undertook further investigation"…and…."listened to the interviews that were conducted" during the third party investigation.    At no time was Ms. Depamphilis interviewed or given the opportunity to respond to any of the baseless allegations made against her prior to being placed on probation.

**Defendants' Discriminatory Campaign to Smear Ms. Depamphilis' Training, Qualifications and Fitness to Serve as a Captain of the NVFD**

100.     In that same November 6, 2023 correspondence, Ms. Depamphilis was informed by the BOFC that there were "discrepancies" between her resume and the State Fire Training

Academy.  She was given thirty (30) days to provide copies of her State Fire Certifications to Stegmaier.

101.    Prior to this correspondence, the NVFD and the BOFC had never raised any issue with Ms. Depamphilis' firefighting credentials, education, fire training certifications, or resume.

102.    When Ms.  Depamphilis applied to become a volunteer for the NVFD she submitted her application along with her State Fire Certifications to the NVFD personnel and training divisions. This included records of all her completed classes with the Hartford Fire Academy: Firefighter I, Firefighter II, HazMat Tech, Fire Officer 1, Fire Instructor 1 all attended at the Hartford Fire Academy from 1998 to 2002.

103.    As recently as May 2021, Stegmaier reviewed Ms. Depamphilis' credentials and resume and determined that that was qualified to be a candidate for the 2021-2024 Captain's term.  In that same correspondence, Stegmaier stated that while Fire Officer I is preferable, Firefighter II is required.

104.    At the time Ms. Depamphilis applied for the position of Captain, no other candidates from Company 2 had the  Fire Officer I class.

105.    Despite this, the BOFC and members of the NVFD, including Trommer, Whalen, and Stegmaier, embarked on a harassing, discriminatory, and retaliatory campaign to smear Ms. Depamphilis' training, qualifications and fitness to serve as a Captain of the NVFD.

106.    On December 12, 2023 a Special BOFC Meeting was held requiring Ms. Depamphilis' attendance to explain why there was an alleged difference between her resume and her certifications.

107.    Prior to the December 12, 2023 meeting, Ms. Depamphilis requested an explanation of what the BOFC deemed were the discrepancies between her resume and her

credentials and provided the BOFC with her written request and follow-up to the State for copies of her certifications.

108.    At the special meeting on December 12th, Ms. Depamphilis provided copies of all the classes identified on her resume under "Education, " as well as her original application to join the NVFD, which on the back of the application states that the classes were taught through the Hartford Fire Academy.  Ms. Depamphilis also provided the updated records with the State indicating that she completed the Fire Officer I class in 2001.  Ms. Depamphilis' documentation showed that she completed the Fire Officer I and Firefighter II class while attending the City of Hartford Fire Academy.

109.    Ms. Depamphilis informed the BOFC at the December 12, 2023 meeting that despite having completed the Fire Officer I class, she would be willing to take the State class at the earliest available date.

110.    Similarly situated male members of the NVFD have not completed Fire Officer I as it is preferable, but not required, for membership in the NVFD.

111.    Similarly situated male members of the NVFD have held Officer positions (including Captain)  without completion of the Fire Officer I class.

112.    Similarly situated male members of the NVFD were allowed to complete classes and attain required certifications while maintaining their position within the NVFD.

113.    For example, on April 10, 2013, Trommer was sworn in as Deputy Chief for the NVFD without the required certifications of Firefighter II, Fire Instructor I and Fire Officer I. On our about  September 23, 2015, Trommer was given an additional twelve months to complete the certification for Officer I.  During that time, Trommer was permitted to stay in his position as Deputy Chief.

114.    Notwithstanding the foregoing, on December 18th, 2023, Ms. Depamphilis received written notification from the BOFC that she was being removed as Captain of Company 2, demoted to the position of Firefighter, and would continue to be on probation on the grounds that she did not have the Fire Officer I class certification.

115.    Ms. Depamphilis received this notification prior to a BOFC Special Meeting held on December 20, 2023, where an alleged vote occurred demoting Ms. Depamphilis from Captain to a "Black Coat." At no time did Ms. Depamphilis receive notice of the December 20, 2023 Special Meeting.

116.    The removal of Ms. Depamphilis as Captain and demotion to firefighter on the basis that she was not qualified for the position because of her lack of proper credentials was a pretext to cover up the discriminatory and retaliatory conduct to which Ms. Depamphilis had been continually subjected to.

117.    At all times herein, Plaintiff was and remains qualified to serve as Captain of Company 2 of the NVFD.

118.    On or about March 14, 2024,  Ms. Depamphilis filed charges of sex and gender discrimination and unlawful retaliation against the Town, BOFC, Trommer, Stegmaier and Whalen with the CHRO and EEOC.

119.    Defendants responded to Plaintiff's CHRO and EEOC charges with continued harassment, discrimination and retaliation.

120.    In February 2025, in an effort to again be restored to her position as Captain, Ms. Depamphilis requested approval from the NVFD to re-take Fire Service Instructor 1 Class with the State of Connecticut.  Fire Service Instructor I is a pre-requisite to take the Fire Officer I

class.    This class was grant funded so there would be no cost to Ms. Depamphilis or the NVFD to take this class.

121.    On or about February 13, 2025, Ms. Depamphilis' received notice from her NVFD Captain that she was in good standing and approved to take the Fire 1 Instructor Class.

122.    On February 14, 2025, Stegmaier informed Ms. Depamphilis that the NVFD would not approve her request to take the Fire Service Instructor 1 Class as she was not in good standing as her Personal Performance Measure ("PMP") was negative forty.

123.    At no time prior was Ms. Depamphilis ever informed by the NVFD or the BOFC that she was not in good standing.  As of November 2024, Ms. Depamphilis was deemed to be a member in good standing.

124.    No similarly situated male members of the NVFD have been denied the opportunity to take any state of Connecticut fire academy classes including Firefighter I and Fire Officer/Fire Instructor I.  Male members of the NVFD with a negative PMP have been approved to take the Fire I Class.

125.    Plaintiff has been subjected to a continuing course of discrimination based on her gender/sex, and continued retaliation for engaging in and assisting in protected activity (the Manke Lawsuit), making internal complaints of harassment, discrimination and retaliation, and filing discrimination claims with the CHRO and EEOC.

126.    Plaintiff was subjected to discrimination based on her gender and sex, as well as retaliation for opposing the discrimination and harassment to which she and Ms. Manke had been subjected to by Defendants.

127.     As a result of the conduct of Defendants, Plaintiff has suffered and continues to suffer from emotional distress, physical and psychological harm, including but not limited to anguish, loss of sleep, damage to reputation, anxiety and humiliation.

128.     As a result of the conduct of Defendants, Plaintiff has suffered economic losses, including a loss of pay and benefits.

129.     Similarly situated male members of the NVFD were not treated similarly to Plaintiff.

## V.     LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
42 U.S.C. § 2000e-2(a)(1)
Disparate Treatment Discrimination
(As to Defendants Town of Newington and BOFC)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.     Plaintiff, a female, was subjected to gender discrimination, harassment and a hostile work environment in the workplace.

131.     Defendants Town and BOFC violated 42 U.S.C. § 2000e-2(a)(1) by discriminating against Plaintiff on the basis of her sex when, among other things, they placed her on Administrative Leave and demoted her from Captain of Company 2 of the NVFD to "Black Coat" firefighter.

132.     Similarly situated male members of the NVFD were not treated similarly to Plaintiff.

133.     Due to the discriminatory, retaliatory and harassing conduct taken against Plaintiff, she was denied the opportunity to apply for the position of Deputy Fire Chief of the FD in the Fall of 2023. A male was appointed to that position.

134.    Defendants had no legitimate nondiscriminatory reason for its treatment of Plaintiff.  Even if Defendants can articulate such a reason, there is sufficient evidence establishing that any stated reason by Defendants is pretext to cover up their discrimination.

135.    Plaintiff was, at all times, qualified for the position of Captain and went above and beyond to serve the Town, BOFC and NVFD.

136.    Because Plaintiff's sex was a determinative factor and made a difference in the discriminatory and harassing conduct to which Plaintiff was subjected, Defendants violated the provisions of Tile VII of the Civil Rights Act, as amended.

137.    As a direct and proximate cause of Defendants' disparate treatment, Plaintiff has suffered damages including but not limited to monetary damages, emotional distress, and loss of enjoyment of life.

**SECOND CLAIM FOR RELIEF**
42 U.S.C. § 2000e-2(a)(1)
Hostile Work Environment—Sex
(As to Defendants Town and BOFC)

1-136.  Plaintiff alleges and incorporates by reference paragraphs 1 through 136 from the First Claim for Relief as if fully set forth herein.

137.    Plaintiff, a female, was subjected to gender discrimination, harassment and a hostile work environment in the workplace.

138.    Defendants, their agents, servants and employees, conducted themselves in an abusive, intimidating, insulting and offensive manner and created a hostile work environment of which Defendants had knowledge.

139.    Despite complaints to, verification of, and knowledge of the foregoing conduct, Defendants neglected and refused to take appropriate measures to stop the offensive conduct.

140.    Plaintiff was forced to continue to be subjected to a hostile and sexually harassing work environment as a result of Defendants' negligence and willful misconduct.

141.    Defendants Town and BOFC violated 42 U.S.C. § 2000e-2(a)(1) by subjecting Plaintiff to discrimination on the basis of her sex by creating and/or maintaining a hostile work environment that adversely affected the terms, conditions, and privileges of Ms. Depamphilis' employment, and failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment.

142.    The harassment was severe and pervasive, materially altered Plaintiff's working conditions, created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and/or created a work environment that Plaintiff perceived to be hostile or abusive, and which adversely affected the terms, conditions, and privileges of her employment.

143.    As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

144.    Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**THIRD CLAIM FOR RELIEF**
42 U.S.C. § 2000e-3(a)
Retaliation
(As to Defendants Town of and BOFC)

1-143.  Plaintiff alleges and incorporates by reference paragraphs 1 through 143 from the Second Claim for Relief as if fully set forth herein.

144.    Because Plaintiff engaged in and assisted in protected activity (the Manke Lawsuit), Defendants subjected Plaintiff to unlawful retaliation.

145.    Because Plaintiff filed internal complaints of discrimination, hostile work environment, and retaliation Defendants subjected Plaintiff to unlawful retaliation.

146.    Because Plaintiff filed complaints with the CHRO and EEOC about the discriminatory, harassing, and hostile work environment to which she was being subjected to on account of her gender and sex, of which Defendants were aware, Defendants subjected Plaintiff to unlawful retaliation.

147.    Plaintiff's participation in the Manke lawsuit constitutes protected activity under the provisions of Title VII of the Civil Rights Act of 1964, as amended.

148.    Plaintiff's internal complaints about the discriminatory and retaliatory treatment to which she had been subjected constitutes protected activity under the provisions of Title VII of the Civil Rights Act of 1964, as amended.

149.    Plaintiff's complaints filed with the CHRO and EEOC about the discriminatory behavior to which she has been subjected to,  as well as her assistance to the plaintiff in the Manke lawsuit,  constitutes protected activity under the provisions of Title VII of the Civil Rights Act of 1964, as amended.

150.    A causal connection exists between Plaintiff engaging in protected activity and Defendants' unlawful retaliation.

151.    The retaliatory actions of Defendants directed at Plaintiff would deter a reasonable employee from engaging and assisting in protected activity and making, filing or supporting a claim of workplace discrimination.

152.    Defendants violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when, through its inaction, it allowed Trommer, Stegmaier, Whalen, members of the

BOFC, and members of the NVFD to retaliate against Plaintiff because of her opposition to discriminatory behavior.

153.     Defendants intentionally, and with malice and/or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, subjected Plaintiff to unlawful retaliation on account of the Plaintiff's opposition to discrimination.

154.     As a result of the conduct of Defendants, Plaintiff has suffered and continues to suffer from emotional distress, physical and psychological harm, including but not limited to anguish, loss of sleep, loss of appetite, damage to reputation, anxiety, and humiliation.

155.     As a result of the conduct of Defendants, Plaintiff suffered economic losses, including a loss of pay and benefits.

**FOURTH CLAIM FOR RELIEF**
Conn. Gen. Stat. § 46a-60(b)(1)
Disparate Treatment Discrimination
(As to Defendants Town of Newington and BOFC)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.     Plaintiff, a female, was subjected to discrimination, harassment and sexual harassment in the workplace, because of her gender.

131.     Defendants violated § 46a-60(b)(1) by discriminating against Plaintiff on the basis of her gender when, among other things, they placed her on Administrative Leave, probationary status and demoted her from Captain of Company 2 of the NVFD to "Black Coat" firefighter.

132.     Due to the discriminatory, retaliatory and harassing conduct taken against Plaintiff, she was denied the opportunity to apply for the position of Deputy Fire Chief of the FD in the Fall of 2023. A male was appointed to that position.

133.    Defendants had no legitimate nondiscriminatory reason for its treatment of Plaintiff.  Even if the Defendants had such a reason, there is sufficient evidence establishing that any stated reason by Defendants is pretext to cover up their discrimination.

134.    Plaintiff was, at all times, qualified for the position of Captain and went above and beyond to serve the Town and its Fire Department.

135.    Because the Plaintiff's gender was a determinative factor and made a difference in the discriminatory and harassing conduct to which Plaintiff was subjected, the Defendants violated the provisions of Conn. Gen. Stat. § 46a-60(b)(1).

136.    As a direct and proximate cause of Defendants' disparate treatment of Plaintiff, Plaintiff has suffered damages including but not limited to monetary damages, emotional distress, and loss of enjoyment of life.

**FIFTH CLAIM FOR RELIEF**
Conn. Gen. Stat. § 46a-60(b)(1)
Hostile Work Environment-Sex
(As to Defendants Town and BOFC)

1-135.  Plaintiff alleges and incorporates by reference paragraphs 1-135 of the Fourth Claim for Relief as if fully set forth herein.

136.    Plaintiff, a female, was subjected to gender discrimination, harassment and sexual harassment in the workplace.

137.    Defendants, its agents, servants and employees conducted themselves in an abusive, intimidating, insulting and offensive manner and created a hostile work environment of which Defendants had knowledge.

138.    Despite complaints to, verification of, and knowledge of the foregoing conduct, Defendants neglected and refused to take appropriate measures to stop the offensive conduct.

139.    The harassment was severe and pervasive, materially altered Plaintiff's working conditions, created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and/or created a work environment that Plaintiff perceived to be hostile or abusive, and which adversely affected the terms, conditions, and privileges of her employment.

140.    Plaintiff was forced to continue to be subjected to a hostile and sexually harassing work environment as a result of Defendants' negligence.

141.    Defendants violated Conn. Gen. Stat. § 46a-60(b)(1) by subjecting Plaintiff to discrimination on the basis of her gender by creating and/or maintaining a hostile work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment, and by failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment.

142.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including, but not limited to, economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

143.    Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**SIXTH CLAIM FOR RELIEF**
Connecticut General Statutes § 46a-60(b)(4)
Unlawful Retaliation
(As to Defendants Town & BOFC)

1-142.    Plaintiff alleges and incorporates by reference paragraphs 1-142 of the Fifth Claim for Relief as if fully set forth herein.

143.    Because Plaintiff engaged in and assisted in protected activity (the Manke Lawsuit), Defendants subjected Plaintiff to unlawful retaliation.

144.    Because Plaintiff filed internal complaints of discrimination, hostile work environment, and retaliation Defendants subjected Plaintiff to unlawful retaliation.

145.    Because Plaintiff filed complaints with the CHRO and EEOC about the discriminatory, harassing, and hostile work environment to which she was being subjected to on account of her gender, of which Defendants were aware, Defendants subjected Plaintiff to unlawful retaliation.

146.    Plaintiff's participation and assistance in the Manke lawsuit constitutes protected activity under the provisions of Conn. Gen. Stat. § 46a-60(b)(4).

147.    Plaintiff's internal complaints about the discriminatory treatment to which she had been subjected constitutes protected activity under the provisions of Conn. Gen. Stat. § 46a-60(b)(4).

148.    Plaintiff's complaints filed with the CHRO and EEOC about the discriminatory behavior to which she has been subjected to constitutes protected activity under the provisions of Conn. Gen. Stat. § 46a-60(b)(4).

149.    Defendants violated the provisions of Conn. Gen. Stat. § 46a-60(b)(4) when, through its inaction, they allowed Trommer, Stegmaier, Whalen, members of the BOFC, and members of the NVFD to retaliate against Plaintiff because of her opposition to Defendants' discriminatory behavior.

150.    A causal connection exists between Plaintiff engaging in protected activity and Defendants' unlawful retaliation.

151.    The retaliatory actions of Defendants directed at Plaintiff would deter a reasonable employee from making, filing or supporting a claim of workplace discrimination.

152.     The Defendants intentionally, and with a discriminatory animus, subjected Plaintiff to unlawful retaliation on account of Plaintiff's opposition to gender, sex, and disability discrimination, retaliation, and harassment.

153.     As a result of the conduct of Defendants, Plaintiff has suffered and continues to suffer from emotional distress, physical and psychological harm, including but not limited to anguish, loss of sleep, loss of appetite, damage to reputation, anxiety, and humiliation.

154.     As a result of the conduct of the Town and BOFC, Plaintiff has suffered from economic losses, including a loss of pay and benefits.

**SEVENTH CLAIM FOR RELIEF**
Connecticut General Statutes § 46a-60(b)(5)
Aiding and Abetting
(As to Defendant Trommer)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.     At all times relevant hereto, Defendant Trommer partnered with Defendants in the discriminatory and retaliatory actions taken against Plaintiff.  All of the Defendants worked together toward the common goal of harassing, discriminating, and retaliating against Plaintiff.

131.     Defendant Trommer aided, abetted, coerced, engineered, compelled and incited the discriminatory and retaliatory conduct of Defendants based on Plaintiff's gender in violation of CFEPA.

132.     At no time did Trommer take any corrective action, despite being witness to, and participating in, some of the alleged discriminatory actions.

133.     Defendant Trommer's conduct gives rise to an aiding and abetting claim under § 46a-60(a)(5) of the Connecticut General Statutes.

134.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

### EIGHTH CLAIM FOR RELIEF
Connecticut General Statutes § 46a-60(b)(5)
Aiding and Abetting
(As to Defendant Stegmaier)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    At all times relevant hereto, Defendant Stegmaier partnered with Defendants in the discriminatory and retaliatory actions taken against Plaintiff.  All of the Defendants worked together toward the common goal of harassing, discriminating, and retaliating against Plaintiff.

131.    Defendant Stegmaier aided, abetted, coerced, engineered, compelled and incited the discriminatory and retaliatory conduct of Defendants based on Plaintiff's gender in violation of CFEPA.

132.    At no time did Stegmaier take any corrective action, despite being witness to, and participating in, some of the alleged discriminatory actions.

133.    Defendant Stegmaier's conduct gives rise to an aiding and abetting claim under § 46a-60(a)(5) of the Connecticut General Statutes.

134.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

30

## NINTH CLAIM FOR RELIEF
Connecticut General Statutes § 46a-60(b)(5)
Aiding and Abetting
(As to Defendant Whalen)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    At all times relevant hereto, Defendant Whalen partnered with Defendants in the discriminatory and retaliatory actions taken against Plaintiff.  All of the Defendants worked together toward the common goal of harassing, discriminating, and retaliating against Plaintiff.

131.    Defendant Whalen aided, abetted, coerced, engineered, compelled and incited the discriminatory and retaliatory conduct of Defendants based on Plaintiff's gender in violation of CFEPA.

132.    At no time did Whalen take any corrective action, despite being witness to, and participating in, some of the alleged discriminatory actions.

133.    Defendant Whalen's conduct gives rise to an aiding and abetting claim under § 46a-60(a)(5) of the Connecticut General Statutes.

134.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## TENTH CLAIM FOR RELIEF
42 U.S.C. §1983
Failure to Supervise
(As to Defendant Town of Newington)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    Defendant Town subjected Plaintiff to discrimination on the basis of her sex by creating and/or maintaining a hostile work environment that adversely affected the terms, conditions, and privileges of Plaintiff's employment, and failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment.

131.    The harassment was severe and pervasive, materially altered Plaintiff's working conditions, created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and/or created a work environment that Ms. Depamphilis perceived to be hostile or abusive, and which adversely affected the terms, conditions, and privileges of her employment.

132.    The hostile work environment was sufficiently severe to deprive Plaintiff of her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

133.    Plaintiff's constitutional injury was the result of a municipal policy or custom, in that policymaking officials of the Town exhibited deliberate indifference to the constitutional deprivations caused by the BOFC and members of the NVFD, including Trommer, Stegmaier, and Whalen.

134.    The Town's failure to act, despite actual knowledge of the harassment and retaliation of Plaintiff by the BOFC and members of the NVFD, including Trommer, Stegmaier, and Whalen, constituted a conscious choice by the Town and was part of the Town's policy, custom, and/or practice.

135.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

136.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**ELEVENTH CLAIM FOR RELIEF**
42 U.S.C. §1983
Failure to Supervise
(As to Defendant BOFC)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the

Statement of Claims above as if fully set forth herein.

130.    Defendant BOFC subjected Plaintiff to discrimination on the basis of her gender

by creating and/or maintaining a hostile work environment that adversely affected the terms,

conditions, and privileges of Plaintiff's employment, and failing or refusing to take appropriate

action to remedy the effects of the discriminatory treatment.

131.    The harassment was severe and pervasive, materially altered Plaintiff's working

conditions, created an objectively hostile or abusive work environment that a reasonable person

would find hostile or abusive, and/or created a work environment that Plaintiff perceived to be

hostile or abusive, and which adversely affected the terms, conditions, and privileges of her

employment.

132.    The hostile work environment was sufficiently severe to deprive Plaintiff of her

rights under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.

133.    Plaintiff's constitutional injury was the result of a municipal policy or custom, in

that policymaking officials of the BOFC exhibited deliberate indifference to the constitutional

deprivations caused by the BOFC and members of the NVFD, including Trommer, Stegmaier

and Whalen.

134.    The BOFC's failure to act, despite actual knowledge of the harassment of Plaintiff

by members of the BOFC and members of the NVFD, including Trommer, Stegmaier, and

Whalen, constituted a conscious choice by the BOFC and was part of the BOFC's policy, custom, and/or practice.

135.    As a result of the foregoing unlawful conduct, Plaintiff suffered and will continue to suffer damages including but not limited to economic damages and loss of benefits, emotional and psychological stress, distress, anxiety, and the ability to enjoy life's pleasures.

136.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**TWELTH CLAIM FOR RELIEF**
42 U.S.C. §1983
Violation of Plaintiff's Right to Equal Protection
(As to Defendant Trommer)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    Defendant Trommer was, at all times relevant to this complaint, acting under color of state law.

131.    The actions of Defendant Trommer subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule and insult.

132.    Defendant's actions were severe and pervasive, causing an abusive working environment that was both objectively and subjectively hostile and abusive.

133.    As a direct and proximate result of Defendant Trommer's actions, the Plaintiff was caused to suffer embarrassment, humiliation, emotional distress, loss of respect in the community, and a loss of dignity some or all of which may be permanent in nature.

134.    Defendant violated Plaintiff's constitutional right under the Equal Protection Clause to work in an environment free of discrimination based on gender.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## THIRTEENTH CLAIM FOR RELIEF
42 U.S.C. §1983
Violation of Plaintiff's Right to Equal Protection
(As to Defendant Stegmaier)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    Defendant Stegmaier was, at all times relevant to this complaint, acting under color of state law.

131.    The actions of Defendant Stegmaier subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule and insult.

132.    Defendant's actions were severe and pervasive, causing an abusive working environment that was both objectively and subjectively hostile and abusive.

133.    As a direct and proximate result of Defendant Stegmaier's actions, the Plaintiff was caused to suffer embarrassment, humiliation, emotional distress, loss of respect in the community, and a loss of dignity some or all of which may be permanent in nature.

134.    Defendant violated Plaintiff's constitutional right under the Equal Protection Clause to work in an environment free of discrimination based on gender.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## FOURTEENTH CLAIM FOR RELIEF
42 U.S.C. §1983
Violation of Plaintiff's Right to Equal Protection
(As to Defendant Whalen)

1-129.  Plaintiff alleges and incorporates by reference paragraphs 1-129 from the Statement of Claims above as if fully set forth herein.

130.    Defendant Whalen was, at all times relevant to this complaint, acting under color of state law.

131.    The actions of Defendant Whalen subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule and insult.

132.    Defendant's actions were severe and pervasive, causing an abusive working environment that was both objectively and subjectively hostile and abusive.

133.    As a direct and proximate result of Defendant Whalen's actions, the Plaintiff was caused to suffer embarrassment, humiliation, emotional distress, loss of respect in the community, and a loss of dignity some or all of which may be permanent in nature.

134.    Defendant violated Plaintiff's constitutional right under the Equal Protection Clause to work in an environment free of discrimination based on gender.

135.    Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court award the following

damages:

1. Economic damages;

2. Compensatory damages;

3. Punitive damages;

4. Injunctive relief, including, but not limited to the following:

    a.    Enjoin Defendants Town of Newington and BOFC from subjecting

    employees to discrimination based on gender, sex, and disability;

    b.    Enjoin Defendants Town of Newington and BOFC from failing to take

    appropriate action in response to employee complaints of sexual

    harassment and discrimination;

    c.    Order Defendants Town of Newington and BOFC to develop and

    implement appropriate and effective policies, practices, and programs

    designed to prevent and correct promptly any sexual harassment from

    occurring in the Fire Department;

    d.    Order Defendants Town of Newington to develop and implement policies,

    practices, and programs to report, investigate, and effectively address

    complaints about sexually harassing behavior in the Town and Fire

    Department;

5. Punitive damages for the Defendants' willful and/or recklessly indifferent

    conduct;

6. Attorneys' fees and costs; and

7.  Any other remedy that may appear to the Court to be just and proper.


                         THE PLAINTIFF
                         MELANIE DEPAMPHILIS


              By:     /s/ Jessica Slippen
                      Robert B. Mitchell (ct02662)
                      Jessica Slippen (ct25765)
                      Mitchell & Sheahan, P.C.
                      999 Oronoque Lane, Suite 203
                      Stratford, CT 06614
                      203-873-0240
                      203-873-0235 (fax)
                      jslippen@mitchellandsheahan.com