UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MELANIE DEPAMPHILIS,  )<br>    *Plaintiff*,  )<br> )<br>v.  )<br> )<br>TOWN OF NEWINGTON, BOARD OF  )<br>FIRE COMMISSIONERS FOR THE  )<br>TOWN OF NEWINGTON, JEFFREY  )<br>TROMMER, CRAIG STEGMAIER,  )<br>BRIAN WHALEN,  )<br>    *Defendants*.  ) | 3:25-CV-00524 (SVN)<br><br><br><br><br>March 10, 2026 |

## RULING AND ORDER GRANTING IN PART MUNICIPAL DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Melanie Depamphilis, a member of the Newington Volunteer Fire Department ("NVFD"), alleges that the Town of Newington (the "Town"), the Board of Fire Commissioners for the Town of Newington ("BOFC"), and three other Newington firefighters in leadership roles—Jeffrey Trommer, Craig Stegmaier, and Brian Whalen (the "Individual Defendants")—discriminated against her on the basis of sex. The complaint alleges fourteen counts against the various Defendants under federal and state law, including claims for: disparate treatment discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"); aiding and abetting discriminatory conduct in violation of CFEPA; and municipal and individual liability for violations of Plaintiff's rights under the Equal Protection Clause of the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

Defendants Newington and BOFC (the "Municipal Defendants") move to dismiss certain of Plaintiff's claims against them, specifically those alleging Plaintiff was subjected to a hostile

work environment (Counts Two and Five) and that the Municipal Defendants failed to supervise the Individual Defendants (Counts Ten and Eleven).[1]  Mot. to Dismiss, ECF No. 16.  Plaintiff opposes the motion, arguing that the factual allegations in her complaint are sufficient to show a hostile environment and a persistent, widespread pattern of discriminatory practice by the Municipal Defendants at the motion to dismiss stage.  Opp. to Mot. to Dismiss, ECF No. 23.

For the reasons described below, the Municipal Defendants' motion to dismiss is GRANTED in part and DENIED in part; Counts Ten and Eleven of the complaint are dismissed, but Counts Two and Five survive dismissal.

I. **FACTUAL BACKGROUND**

The following facts are accepted as true for the purposes of evaluating Defendants' motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. The Parties

Plaintiff is a career firefighter.  *See* Compl., ECF No. 1 ¶ 1.  Plaintiff was employed as a firefighter by the City of Hartford Fire Department between 1998 and her retirement in 2018, serving as a firefighter, Pump Operator/Deputy Chief Aide, and, eventually, Lieutenant.  *Id.* ¶¶ 27–31.  In addition to her employment with the City of Hartford, Plaintiff has been a volunteer member of the NVFD since 2014.  *Id.* ¶ 2.  In her role as a member of the NVFD, Plaintiff has served as an Engineer, Staff Captain, 2nd Lieutenant, 1st Lieutenant, and Captain.  *Id.*  During her time with the NVFD, Plaintiff received numerous awards and achievements, including Newington Fire Department Company 2 Officer of the year twice.  *Id.* ¶ 50.

Defendant Newington is a municipal entity in the state of Connecticut.  *Id.* ¶ 13. Defendant BOFC is a political subdivision of the town of Newington, comprised of board members elected

---

[1] The Individual Defendants do not join in the motion to dismiss and have not moved to dismiss any of Plaintiff's claims against them.  As discussed below, their answer to the complaint is well overdue.

by Newington residents. *Id.* ¶¶ 14–15. It is charged with operating the NVFD, including supervising and maintaining all NVFD buildings and equipment, appointing NVFD officers and personnel, and annually preparing the organization's budget. *Id.* ¶ 17. It also "acts as a final board of appeal for NVFD personnel matters." *Id.* ¶ 18. While the NVFD is a volunteer organization and does not employ its members, the members receive "remuneration" from Newington in exchange for their services, including payments per fire call, an annual stipend, and a pension. *Id.* ¶ 20.

At all times relevant to Plaintiff's complaint, Defendant Jeffrey Trommer was the Fire Chief for the NVFD, Defendant Craig Stegmaier was the Deputy Fire Chief for the NVFD, and Defendant Brian Whalen was the Chairman of the BOFC and a member of Plaintiff's company within the NVFD. *Id.* ¶¶ 21, 23, 25.

B. Plaintiff's Membership with the NVFD

In 2014, Plaintiff applied for membership in the NVFD. *Id.* ¶ 35. From 2014 to 2015, Plaintiff served as a firefighter and Engine 2 Engineer. *Id.* ¶ 39. She was then promoted to two officer positions: Staff Captain and 2nd Lieutenant of NVFD Company 2. *Id.* ¶ 40. She served in both roles from 2015 to 2018, after which she was promoted to 1st Lieutenant of Company 2. *Id.* ¶ 43. In 2021, Plaintiff was promoted to Captain of Company 2. *Id.* ¶ 47.

At the time Plaintiff applied to become a member of the NVFD, it was heavily male-dominated; there were "[fewer] than three female members" of the department. *Id.* ¶ 36. And at the time the complaint was filed, Plaintiff was the first and only female in the one hundred year history of the NVFD to hold the Line/Suppression Officer position both as Lieutenant and Captain. *Id.* ¶ 48.

During the summer of 2023, the NVFD was the subject of ongoing litigation in a suit brought by another female member of the department. *Id.* ¶ 54. In that suit, Plaintiff's female

3

colleague asserted claims for retaliation, hostile work environment, sexual harassment, and gender discrimination, in connection to her receipt of a package in the mail from a male member of the NVPD containing a chocolate penis with a note telling her to "Eat a Dick." *Id.* ¶ 55. Plaintiff received two subpoenas in connection with this lawsuit. *Id.* ¶¶ 54, 77.

C. Allegations of Discriminatory Treatment

Once members of the BOFC and the Individual Defendants learned about Plaintiff's involvement in her colleague's lawsuit in the summer of 2023, Plaintiff began to experience negative treatment from fellow members of the NVFD. *See id.* ¶¶ 56–57. First, Defendant Trommer became "extremely angry, aggressive, and belittling" towards her during a July 4, 2023, fire call. *Id.* ¶ 58. Also on July 4, Plaintiff reported that her leather Captain's helmet had been taken from her secured locker, but no investigation was undertaken regarding the helmet's disappearance. *Id.* ¶ 59. Plaintiff was "accused of losing the helmet" and was not given a replacement. *Id.*

On July 10, 2023, Plaintiff received a report that Defendant Whalen, a member of Company No. 2, "had contraband, in the form of pornography, in his assigned firehouse locker." *Id.* ¶ 60. Plaintiff, then Captain of Company No. 2, directed Whalen to remove the pornography from his locker, as it was in violation of the NVFD rules and Newington's sexual harassment policy. *Id.* ¶ 61. Whalen agreed to remove the materials, but requested information about the identity of the person who made the report to Plaintiff, after which Plaintiff informed him that he was required to remove the materials immediately. *Id.* ¶ 62. Plaintiff directed her male lieutenants to confirm with Whalen that the materials had been removed, and Whalen "became extremely aggressive in response." *Id.* ¶ 63. He screamed at Plaintiff, "You'll be sorry for doing this," "You're gonna wish this didn't happen," and "I will have your job for this." *Id.*

On July 11, 2023, Plaintiff submitted a report to Defendant Stegmeier, the Deputy Fire Chief, regarding Whelan's locker contraband incident. *Id.* ¶ 65. On July 16, 2023, Plaintiff requested that Stegmaier conduct an investigation into Whalen's actions. *Id.* ¶ 66. Plaintiff informed Stegmaier that she was concerned for her safety because she "was being subjected to continuing harassment and a hostile work environment." *Id.* Neither NVFD nor BOFC conducted any investigation into Whalen's actions, Plaintiff's hostile work environment complaint, or Plaintiff's discrimination complaint. *Id.* ¶¶ 68–69. Plaintiff states that her complaint "was deemed to be 'unfounded' ab initio." *Id.* ¶ 68.

On July 18, 2023, Stegmaier informed Plaintiff that Trommer requested disciplinary action be taken against her because she "show[ed] disrespect" to him in connection with the July 4, 2023, fire call and in connection with a NVFD awards event that occurred approximately one month earlier, on June 3, 2023. *See id.* ¶¶ 58, 72–73. Plaintiff in turn told Stegmaier that "she was being subjected to a hostile work environment, harassment and retaliation, and asked for assistance from NVFD and BOFC." *Id.* ¶ 74. Plaintiff asserts that Trommer and other male members of the NVFD "belittled [Plaintiff's] authority as a Captain, and refused to properly communicate with her." *Id.* ¶ 75.

On August 7, 2023, Stegmaier contacted Newington's mayor and a member of its town council, asserting that Plaintiff harbored "personal vendettas" against the NVFD and "circumvent[ed] the chain of command" with respect to the incident regarding the contraband in Whalen's locker. *Id.* ¶ 78. Stegmaier also stated that Company 2—the company of which Plaintiff was Captain—had "low morale." *Id.* On August 9, 2023, a disciplinary notice was placed in Plaintiff's personnel file pertaining to the NVFD awards event on June 3, 2023. *Id.* ¶ 79. The

notice stated that there had been a meeting on August 9 to discuss the incident, but no such meeting occurred on August 9. *Id.*

On August 10, 2023, Plaintiff sent her own email to Stegmaier, Newington's mayor, and members of the NVFD and BOFC, stating that she was being subjected to a hostile work environment and ongoing harassment. *Id.* ¶ 80.

On August 3, 2023, and August 16, 2023, Whalen and Trommer, respectively, filed complaints against Plaintiff, alleging that she had created a hostile work environment and harassed them; Trommer also alleged that Plaintiff had defamed him. *Id.* ¶¶ 76, 81. On August 17, 2023, Plaintiff was placed on administrative leave. *Id.* ¶ 82. During the administrative leave, she was unable to respond to calls, access the firehouse, or access her NVFD files or email. *Id.*

In September of 2023, the town of Newington hired a third party to investigate the complaints by Defendants Whalen and Trommer against Plaintiff; the investigator concluded that Plaintiff's actions did not create a hostile work environment or constitute harassment or defamation. *Id.* ¶¶ 84–85. Plaintiff thereafter made multiple unsuccessful requests to be removed from administrative leave and returned to her Captain position. *Id.* ¶¶ 86–87, 94, 97. She was not permitted to apply to a Deputy Fire Chief position that opened while she was on administrative leave. *Id.* ¶¶ 95–96.

On October 10, 2023, Plaintiff was informed that her attendance was required at a BOFC Executive Session meeting on October 12, and that Defendants Whalen and Trommer would be in attendance. *Id.* ¶ 88. After Plaintiff requested that the meeting take place in an open session, the BOFC notified Plaintiff that she was no longer required to attend the meeting because the third-party investigation into her conduct was still ongoing. *Id.* ¶ 90. Plaintiff was eventually not

6

permitted to attend the meeting, which, Plaintiff alleges, included Defendants Whalen and Trommer and involved an update on the third-party investigation. *Id.* ¶ 91.

On November 6, 2023, BOFC informed Plaintiff that she would be removed from administrative leave and restored to her position as Captain, but also that she would be placed on a one-year probation based on her "actions and behaviors" and "issues related to the morale at Company 2." *Id.* ¶¶ 98–99. BOFC also told Plaintiff that there were "discrepancies" between her the qualifications on her resume and her certifications. *Id.* ¶ 100. BOFC requested copies of Plaintiff's state fire certifications. *Id.* Plaintiff attended a special meeting of BOFC on December 12, 2023, to discuss the alleged discrepancies, which had never before been raised with her. *Id.* ¶¶ 101, 106–108. On December 18, 2023, BOFC removed Plaintiff from her Captain position, on the grounds that she did not have Fire Officer I certification, and demoted her to Firefighter—even though other officers who lacked the Fire Officer I certification, including Deputy Chief Trommer, had been permitted to remain in officer positions while completing such certification. *Id.* ¶¶ 109–14.

On March 14, 2024, Plaintiff filed charges with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging sex and gender discrimination and unlawful retaliation by Newington, BOFC, and the Individual Defendants. *Id.* ¶ 118. On January 17, 2025, the CHRO issued a release of jurisdiction, and on February 5, 2025, the EEOC issued a dismissal and notice of rights. *Id.* ¶ 11.

In February of 2025, Plaintiff requested approval to complete a state "Fire Service Instructor 1" course, which is a prerequisite to the Fire Officer I certification. *Id.* ¶ 120. Plaintiff received conflicting information about her eligibility to take the state course: on February 13, she

was informed she was approved to take the class, but on February 14, Stegmaier told her she was not approved because she "was not in good standing" with the NVFD and had a negative "Personal Performance Measure." *Id.* ¶¶ 121–22. Plaintiff had not been previously notified that she was not in good standing, and had been told she *was* in good standing in November 2024 and again on February 13. *Id.* ¶¶ 121, 123. Plaintiff alleges that no similarly situated male members of the NVFD have been denied the opportunity to take such classes, and that male members with negative personal performance measures have been approved to take state fire certification classes. *Id.* ¶ 124.

On the basis of these allegations, Plaintiff has alleged claims for disparate treatment discrimination, hostile work environment, and retaliation under both Title VII and the CFEPA against the Town and the BOFC (Counts One through Six); aiding and abetting discrimination and retaliation under the CFEPA against each of the Individual Defendants (Counts Seven through Nine); failure to supervise, in violation of the Equal Protection Clause, under 42 U.S.C. § 1983 against the Town and the BOFC (Counts Ten and Eleven); and violations of Plaintiff's Equal Protection Clause rights against each of the Individual Defendants, under § 1983 (Counts Twelve through Fourteen).

The Municipal Defendants have moved to dismiss only Counts Two, Five, Ten, and Eleven. *See* ECF No. 16.

## II. LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8

alleged." *Iqbal*, 556 U.S. at 678.  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

However, the Court is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   DISCUSSION

#### A.   Counts Two and Five: Hostile Work Environment

The Court concludes that Plaintiff has plausibly stated a claim that she was subjected to a hostile work environment under both Title VII and the CFEPA.

Federal courts apply the same standard in analyzing hostile work environment claims under Title VII and CFEPA.  *Gray v. Minnesota Mining & Mfg. Co.*, No. 3:23-CV-01069 (VDO), 732 F. Supp. 3d 184, 189, 191 (D. Conn. 2024); *see also Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998) (noting that Connecticut courts look "for guidance to federal case law interpreting Title VII" in interpreting the CFEPA).  Accordingly, the Court looks to the same principles of federal law to analyze Plaintiff's hostile work environment claims under both statutes.

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of sex. 42 U.S.C. § 2000e-2(a)(1).  This prohibition extends beyond "'economic' or 'tangible'" discrimination to "'strike at the entire spectrum of disparate treatment of men and

9

women' in employment," including protecting employees from "discriminatorily hostile or abusive [work] environment[s]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . Title VII is violated." *Id.* (internal quotation marks and citations omitted); *Brittell*, 247 Conn. at 166 (citing *Harris*). To state a claim for sex discrimination based on a hostile work environment, a plaintiff must plead: (1) the conduct complained of "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Courts must examine the totality of the circumstances in determining whether workplace conduct objectively creates a hostile or abusive environment, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23.

Defendant challenges only the third element of a hostile work environment claim: that the hostile environment was created "because of the plaintiff's sex." *Patane*, 508 F.3d at 113. Assuming that the conduct of the Individual Defendants is imputed to the Municipal Defendants,[2]

---

[2] "A plaintiff who is harassed by a co-worker "must show both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Gray*, 732 F. Supp. 3d at 191–92 (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir. 1996)). "Where . . . harassment is perpetrated by a plaintiff's co-worker[], an employer will be liable if the plaintiff demonstrates that the employer either (1) provided no reasonable avenue for complaint . . . or (2) knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *9 (D. Conn. Dec. 4, 2015) (citations omitted). The Municipal Defendants do not

and considering the totality of the allegedly hostile conduct, the Court concludes that Plaintiff has plausibly alleged this element of her claim.

For workplace mistreatment to be actionable, it must occur "*because of an employee's sex*, or other protected characteristic." *Brown,* 257 F.3d at 252 (emphasis added); *Gray*, 732 F. Supp. 3d at 192 ("In order to sufficiently plead a hostile work environment, Plaintiff must link the harassment to her claim of sex discrimination."); *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 326 (D. Conn. 2014) ("A hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status . . . rather than other reasons"). Workplace incidents need not be "overtly sexual" to support a claim relating to a sex-based hostile work environment, *Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002), but the Second Circuit requires a plaintiff to allege "factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her sex." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). Failure to allege, explicitly or implicitly, that sex "played a substantial role" in the challenged behavior can doom a hostile work environment claim. *Id.* at 15–16 (quoting *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001), *as amended* (Apr. 20, 2001).

Examining the totality of the circumstances, Plaintiff's complaint alleges facts supporting a reasonable inference that the Municipal Defendants subjected Plaintiff to negative treatment because of her sex. First, the Second Circuit has noted that the mere presence of pornography in a workplace can alter a female plaintiff's "status in th[at] workplace." *Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000); *see also Patane*, 508 F.3d at 114. Although Plaintiff does not allege she was directly exposed to these materials like the plaintiffs in *Wolak* and *Patane*, the presence of

---

contest that the actions of the Individual Defendants may be imputed to them. Accordingly, the Court assumes, without deciding, that it is appropriate to consider such actions here.

11

pornography in a male firefighter's locker can be considered "particularly offensive to women and intended to provoke Plaintiff's reaction as a woman," for purposes of stating a plausible claim of a hostile work environment. *Patane*, 8 F.3d at 114–15 (cleaned up).  ECF No. 1 ¶¶ 60–64.

In addition to the pornography issue, Plaintiff alleges that:

- When she applied for membership to the NVFD, there were fewer than three female members of the NVFD, which was heavily male-dominated;

- Plaintiff was the first and only female in the 100-year history of the NVFD to hold a Line/Suppression Officer position both as Lieutenant as Captain;

- Defendant Trommer was "extremely angry, aggressive, and belittling" towards Plaintiff during a fire call, and later reported her for "show[ing] disrespect";

- Plaintiff's Captain helmet disappeared from her locker, and she was accused of losing it;

- Defendant Whalen's reaction to Plaintiff regarding the pornography incident is alleged to have been "aggressive, angry, and belligerent," and he allegedly made threats about Plaintiff losing her job in response;

- Defendants Stegmaier, Whalen, and Trommer made official and unofficial complaints about Plaintiff's workplace conduct, and certain statements within those complaints were false;

- Plaintiff's complaints of harassment and a hostile work environment were not investigated[3];

- The BOFC placed Plaintiff on administrative leave and conducted an independent investigation into *her* conduct after Defendant Whalen and Trommer's complaints, and excluded Plaintiff from a meeting at which the investigation was discussed;

- When Plaintiff returned from administrative leave, BOFC placed her on probation, questioned her credentials and eventually demoted her; and

- Plaintiff received conflicting information about whether she was in "good standing" with the NVFD, and was not approved to take a professional development course

---

[3] The Court notes that the Municipal Defendants' alleged failure to investigate Plaintiff's claims that she was experiencing harassment does not, in and of itself, contribute to the existence of a hostile work environment, because it does not alter the terms and conditions of employment. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010); *Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420 (AT), 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016).

12

because she lacked good standing, despite that similarly situated male members of the NVFD had been approved to take a similar course.

ECF No. 1 ¶¶ 36, 48, 57–59, 60–69, 76, 78–91, 98–108, 114–115, 120–123. When considered in combination with the pornography incident, these allegations, taken as true, show that both the Individual and Municipal Defendants undermined, denigrated, and affirmatively sidelined Plaintiff—a decorated female leader in the NVPD. Thus, they state a plausible claim that the Municipal Defendants created hostile work environment for Plaintiff because of her sex.

In making this assessment, two features of Plaintiff's workplace are significant: that it was gender-imbalanced and related to public safety. "The Second Circuit has indicated that courts should be particularly sensitive to sex-based hostile work environment claims in law enforcement, prison or first responder settings where officers must depend on each other for protection and on their own ability to assert authority in potentially dangerous situations." *Alward v. Conn. Dep't of Public Safety*, No. 3:08-CV-1952 (RNC), 2011 WL 4572945, at *6 (D. Conn. Sept. 30, 2011) (citing *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 274 (2d Cir. 2004)); *see also id.* at 273 (noting that, in settings where officers "depend upon their co-workers for mutual protection . . . actions of co-officers and superiors that undermine an officer's sense of personal safety or compromise [a female plaintiff's] capacity to command respect and obtain compliance from co-workers [and] subordinates . . . assume greater, not lesser significance," and that "female officers may be particularly vulnerable . . . because of stereotypical assumptions about the propriety of women exercising authority in traditionally male-dominated occupations"). Indeed, Plaintiff specifically alleges that she feared for her safety and was being subjected to continuing harassment. ECF No. 1 ¶ 66. In the firefighting context in particular, the actions attributed to the Individual Defendants support a plausible claim of a hostile work environment. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) ("In an occupation whose success in preserving life

and property often depends on firefighters' unquestioning execution of line-of-command orders in emergency situations, the fomenting of gender-based skepticism as to the competence of a commanding officer may easily have the effect, among others, of diminishing the respect accorded the officer by subordinates and thereby impairing her ability to lead in the life-threatening circumstances often faced by firefighters.")

Considering the totality of the circumstances and drawing all reasonable inference in Plaintiff's favor—as it must, at this stage—the Court finds that Plaintiff has adequately alleged that she suffered a hostile work environment based on her sex. Of course, if discovery reveals otherwise, Defendants are free to renew their arguments for dismissal at the summary judgment phrase.

B.  Counts Ten and Eleven:  *Monell* Liability

Plaintiff's municipal liability claims, on the other hand, are not plausibly pleaded.

Together, 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment protect public employees from various forms of discrimination, including disparate treatment on the basis of sex. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 320 (2d Cir. 2015); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), a town or municipality can be directly liable for violations of § 1983 committed by its employees in certain circumstances. In each circumstance, a plaintiff "must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (cleaned up) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), and *Roe v. City of Waterbury*, 542 F.3d 31, 40 (2d Cir. 2008)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan Cnty.*, 520 U.S. at 404.

The Second Circuit has distilled the requirements of a *Monell* claim into three elements, holding that a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see also Agosto*, 982 F.3d at 97. A plaintiff may satisfy the policy or custom element in one of four ways:

> (1) a formal policy which is officially endorsed by the municipality, . . . (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the [plaintiff's] civil rights, . . . (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive notice knowledge of policy-making officials . . . or (4) a failure by official policy makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Albert v. City of Hartford*, 529 F. Supp. 2d 311, 329 (D. Conn. 2007) (cleaned up) (collecting cases); *see also Gomez v. City of Norwalk*, No. 15-CV-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017).

Plaintiff has decidedly failed to plead the existence of a municipal policy or custom, rendering Counts Ten and Eleven unable to withstand a motion to dismiss. To start, in her complaint, Plaintiff refers to Counts Ten and Eleven as "42 U.S.C. §1983 Failure to Supervise." ECF No. 1 at 31–33. The precise contours of the alleged failure to supervise are far from clear, but Plaintiff suggests in conclusory language in her complaint that the Municipal Defendants exhibited a policy of deliberate indifference to deprivations of Plaintiff's constitutional rights by consciously failing to act in response to her harassment and retaliation claims. *Id.* at 31–34. But a plaintiff advancing a failure to supervise theory on the basis of deliberate indifference must

"show that the need for more or better supervision . . . was obvious." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995). A need may be obvious if the municipality received "repeated complaints of civil rights violations," and deliberate indifference can be inferred if there is "no meaningful attempt on the part of the municipality to investigate or to forestall further incidents," or may be shown through expert testimony. *Id.* In *Vann*, the plaintiff survived summary judgment in an excessive force case by proffering evidence that the officer in question had been the subject of numerous complaints; had been disciplined several times; had been psychologically evaluated; had been placed on restricted duty; and then had been returned to active duty, where he was involved in "several additional incidents" before assaulting the plaintiff; and that the police department had inadequate staffing and procedures to monitor problematic officers. *Id.* at 1042, 1051.

Although *Vann* was decided in a summary judgment posture, its facts are a far cry from what Plaintiff alleges here. For instance, Plaintiff has not alleged repeated complaints of civil rights violations indicating "obvious need" for better supervision: apart from her own complaints, Plaintiff references only the existence of one lawsuit brought by another NVFD member. *Cf. Vann*, 72 F.3d at 1042 (detailing at least nine complaints made by members of the public against a single police officer); *Gilbert v. Newton*, No. 3:13-CV-1715 (JCH), 2015 WL 3755955, at *6–7 (D. Conn. June 15, 2015) (holding a reasonable jury could infer deliberate indifference in light of at least seven complaints relating to suspicionless traffic stops); *see also Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *6 (E.D.N.Y. July 19, 2005) (noting that *Vann*'s principle is applied only "in certain limited, particularly serious, egregious and abusive circumstances"). The fact that the Municipal Defendants did not act in response to Plaintiff's multiple complaints of discrimination and harassment does not itself suggest a failure to supervise

that rises to the level of deliberate indifference, such that it can be considered an official policy of the Town or the BOFC.

The Court acknowledges that "the pre-discovery pleading standard for a *Monell* custom or practice is not a high bar, and just a handful of instances of 'similar' unconstitutional misconduct, *in addition to a plaintiff's own experience*, can warrant proceeding to discovery."  *Gavin v. City of New York*, No. 20-CV-8163 (JPO), 2021 WL 3774113, at *4 (S.D.N.Y. Aug. 24, 2021) (emphasis added) (cleaned up).  But Plaintiff has failed to clear even this low bar.  Indeed, Plaintiff's complaint is almost entirely comprised of allegations of discriminatory conduct *towards herself*.[4]  This can hardly be called a "pattern" of misconduct, much less a pattern "so widespread as to have the force of law."  *Bryan Cty.*, 520 U.S. at 404.  Accordingly, Plaintiff has failed to state a claim for municipal liability under 42 U.S.C. § 1983, the Equal Protection Clause, and *Monell*.[5]

## IV.   CONCLUSION

For the reasons described herein, the Municipal Defendants' motion to dismiss is DENIED as to counts Two and Five and GRANTED with respect to Counts Ten and Eleven.  Counts Ten and Eleven are DISMISSED.  Should Plaintiff wish to amend her complaint with respect to Counts Ten and Eleven to remedy the deficiencies addressed in this Order, she may do so by **March 31, 2026**.  If Plaintiff does not file an amended complaint by that date, any later motion to amend will be governed by Federal Rule of Civil Procedure 16, rather than Rule 15.

The Municipal Defendants shall file an answer to any amended complaint—or the present complaint, if Plaintiff chooses not to amend—with respect to the remaining claims by **April 14,**

---

[4] Although Plaintiff relies on *Zaborowski v. Village of Hinsdale, Ill.*, No. 21-CV-03454, 2022 WL 1908905, at *4 (N.D. Ill. 2022), for the proposition that a plaintiff's own experience alone may be sufficient to state a *Monell* claim, that case is not binding here, and stands in conflict with cases within the Second Circuit.  *See, e.g.*, *Gavin*, 2021 WL 3774113, at *4.

[5] To the extent Plaintiff is pursuing a theory that the Municipal Defendants' conduct was so pervasive as to be considered a "custom or usage," *Albert*, 529 F. Supp. 2d at 329, that theory fails for the same reason.

**2026**.  *See* Fed. R. Civ. P. 15(a)(3).  Additionally, the Individual Defendants did not move to dismiss but have not yet answered Plaintiff's complaint, despite that their response to the complaint was due June 13, 2025.  *See* ECF Nos. 13, 14, 15.  The Court *sua sponte* extends their deadline to answer any amended complaint, or the present complaint—if Plaintiff chooses not to amend—to **April 14, 2026**, for administrative convenience.

      **SO ORDERED** at Hartford, Connecticut, this 10th day of March, 2026.

                                        */s/ Sarala V. Nagala*
                                        SARALA V. NAGALA
                                        UNITED STATES DISTRICT JUDGE